UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED BUSINESS BANK, a California corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>SAM A. GAWAD, JR. aka SAM A. GAWAD, aka S. A. GAWAD, JR., aka S. GAWAD, JR., aka S. GAWAD,<br><br>   Defendant. | CASE NO.  1:24-cv-00473 |

## COMPLAINT

Plaintiff United Business Bank (the "Bank") complains and alleges as follows:

## GENERAL ALLEGATIONS

### PARTIES

1. At all times mentioned, Bank was and is a California corporation doing business in the County of Contra Costa, State of California and authorized to do business in the State of California. The Bank's address is 500 Ygnacio Valley Road, Suite 200, Walnut Creek, California 94596.

2. Defendant Sam A. Gawad, Jr. ("Gawad") is a resident of the State of Maryland whose address is 5022 Alta Vista Road, Bethesda, Maryland 20814.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Bank and Gawad are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## COUNT I

### (Breach of Escrow Agreement)

4. The Bank repeats and realleges the allegations contained in paragraphs 1 through 3, inclusive, above and by reference thereto incorporates the same herein as though set forth in full.

5. The Lynne A. Bui Living Trust Dated August 3, 2009 ("Borrower"), by and through Lynne A. Bui ("Bui"), its trustee, executed that certain Promissory Note dated July 29, 2021 in the principal sum of $5,000,000 ("Promissory Note"), a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference as though set forth in full.

6. In connection with the execution of the Promissory Note, Borrower executed that certain Business Loan Agreement dated as of July 29, 2021 ("Business Loan Agreement"), a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by this reference as though set forth in full.

7. In connection with the execution of the Promissory Note and the Business Loan Agreement, Borrower executed that certain Assignment of Deposit Account dated July 29, 2021 ("Assignment of Deposit Account"), a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by this reference as though set forth in full.  Pursuant to the terms of the Assignment of Deposit Account, the Borrower granted the Bank a security interest in the Account consisting of Certificate of Deposit Account No. 2200160 with an approximate balance of $5,000,000 (the "Certificate of Deposit") that was deposited with the Bank.

8. Borrower executed that certain Change in Terms Agreement dated August 17, 2021 ("Change in Terms Agreement No. 1"), a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein by this reference as though set forth in full.  Borrower executed that Change in Terms Agreement dated July 16, 2022 ("Change in Terms Agreement No. 2"), a

true and correct of which is attached hereto as <u>Exhibit 5</u>, and incorporated herein by this reference as though set forth in full.

9.  The Promissory Note, Business Loan Agreement, Change in Terms Agreement No.1, Change in Terms Agreement No. 2, and Assignment of Deposit Account are hereinafter collectively referred to as the "Loan Documents".

10. All capitalized terms not otherwise defined in this Complaint shall have the meanings ascribed to them in the Loan Documents.

11. Prior to February 22, 2022, the Borrower requested that the Bank temporarily release $1,000,000 from the Certificate of Deposit in order to allow Bui to close on and pay a refundable loan fee on a $20,000,000 proposed loan to be made by Capital Funds Manager LLC, to LeSoleil, Inc. which the Bank is informed and believes and alleges is a Delaware corporation of which Bui is the Chief Executive Officer, Secretary and Chief Financial Officer.

12. The Bank agreed with Bui to the release of $1,000,000 from the Certificate of Deposit subject to the following conditions:

   a.  The $1,000,000 released from the Certificate of Deposit would be deposited into an escrow account established by Gawad with the $1,000,000 to be held in escrow and only to be released to Capital Funds Manager LLC upon Gawad receiving written approval from the Bank; and

   b.  The Bank would charge the Borrower an early withdrawal fee on the $1,000,000 withdrawal from the Certificate of Deposit.

13. On February 22, 2023, Peter Taormina ("Taormina"), Commercial Lending Portfolio Manager of the Bank, sent an email at 5:26 p.m. Pacific time to Gawad, a true and correct copy of which is attached hereto as <u>Exhibit 6</u>, and incorporated herein by this reference as though set forth in full, setting forth the terms of the escrow which the Bank wished to establish with

Gawad (the "Escrow") which stated as follows:

> Hello Sam,
>
> My name is Peter Taormina, and I am the Portfolio Manager for United Business Bank in Walnut Creek, CA. I am working with Dr. Bui on her loan request from Capital Funds Managers LLC and wanted to touch base with you regarding some items our bank will require on this transaction, see below:
>
> - Escrow will be required to obtain written approval from United Business Bank prior to the release of $1MM escrow funds to Capital Funds Manager LLC at the time the $20MM loan is closed.
>   ◦ UBB will require a copy of the closing statement in order to ensure that $1MM will be wired directly to UBB clearing account at close
> - At closing escrow will:
>   ◦ Release the $1MM Retainer Fee to Capital Fund Managers LLC
>   ◦ Release the $20MM in Loan proceeds to LeSoleil Inc. of which $1MM will be wired directly to United Business Bank to repay the $1MM.
>
> Please confirm that these requirements are acceptable and will be followed. Let me know if you have any questions, thanks!

14. Thereafter, on February 22, 2023 at 6:13 p.m. Pacific time, Gawad sent an email to Taormina, copied to Bui, a true and correct copy of which is attached hereto as Exhibit 7 and incorporated herein by this reference as though set forth in full, stating:

> Hi Peter. Just spoke to my partners who updated me and I am in agreement with the below. I will send you my iolta wiring instructions shortly.

15. Thereafter, on February 22, 2023 at 6:15 p.m. Pacific time, Taormina received an email from Gawad, a true and correct copy of which is attached hereto as Exhibit 8 (with redactions made to the account number and Routing/ABA Number) attaching the wiring instructions referred to in Gawad's email of February 22, 2023 at 6:13 p.m. Pacific time.

16. As a result of the emails exchanged between Taormina and the Bank and Gawad on February 22, 2023, the Bank and Gawad entered into an escrow agreement with respect to the

$1,000,000 to be released by the Bank from the Certificate of Deposit (the "Escrow Agreement").

17. Thereafter, on February 23, 2023 at 6:06 p.m. Pacific time, Taormina sent an email to Gawad, a true and correct copy of which is attached hereto as Exhibit 9, stating in part as follows:

> I hope your day has been well. I just wanted to circle back with you on this request. I just received approval from my CCO to release the funds in the amount of $1MM to the escrow information you provided. We are past our wire cut off time here in California but I have instructed my loan servicing department to get this processed first thing tomorrow morning . . .

In response, Gawad sent an email on February 23, 2023 at 6:54 p.m. Pacific time to Taormina, copied to Bui, a true and correct copy of which is attached hereto as Exhibit 10:

> Much appreciated Peter. Looking forward to working with you and Dr. Bui.

18. Thereafter, on February 23, 2023 at 7:03 p.m. Pacific time, Gawad sent an email to Taormina, a true and correct copy of which is attached hereto as Exhibit 11, stating as follows:

> Please confirm that you and Chris Johnson have agreed upon a 1% escrow fee that will be deducted upon receipt of funds into my iolta account. Thanks Peter.

19. In response, on February 23, 2023 at 7:36 p.m. Pacific time, Taormina sent an email to Gawad, a true and correct copy of which is attached hereto as Exhibit 12, stating as follows:

> Hi Sam, I have not been contacted by Chris Johnson. Is this 1% escrow fee refunded if the loan is not funded?

20. In response, on February 23, 2023 at 7:49 p.m. Pacific time, Gawad sent an email, a true and correct copy of which is attached hereto as Exhibit 13, stating as follows:

> No problem. Chris is a compliance partner of mine. It would be highly unusual for an escrow agent to accept funds and not charge a fee.

21. On February 23, 2023, Taormina sent an email to Gawad at 8:03 p.m. Pacific time, a true and correct copy of which is attached hereto as Exhibit 14, which stated:

5

> Hi, Sam, I totally understand. I'm working with Dr. Bui and will have her wire in the 1% fee separately so that $1MM funds United Business Bank sends in is always whole. I will reaching back out to you shortly.

22. In response, Gawad sent an email to Taormina on February 23, 2023 at 8:06 p.m. Pacific time, a true and correct copy of which is attached hereto as <u>Exhibit 15</u>, stating:

> Understood and appreciated. Thanks Peter.

23. On February 24, 2023, pursuant to the Escrow Agreement, the Bank initiated a wire transfer of $1,000,000 from the Certificate of Deposit to the iolta account maintained by Gawad (the "Escrow Account"). In response, on Saturday, February 25, 2023 at 9:04 a.m. Pacific time, Gawad sent an email to Taormina, a true and correct copy of which is attached hereto as <u>Exhibit 16</u>, stating:

> Yes wire received sir.

24. On July 18, 2023, the Bank learned for the first time that Lynne A. Bui had filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code which was pending in the Bankruptcy Court for the Middle District of Florida, Tampa Division, Case No. 8:23-bk-02914-RCT.

25. In response, on July 19, 2023, George Kim ("Kim"), Senior Vice President and Regional Term Leader of the Bank, contacted Gawad by telephone and requested that he return the $1,000,000 wired by the Bank into the Escrow established by Gawad pursuant to the Escrow Agreement. Gawad advised Kim that on February 27, 2023, Gawad had wired the $1,000,000 previously deposited by the Bank into Escrow Account as follows: (i) wired $990,000 to Khloris Biosciences Inc.; and (ii) retained $10,000 from the $1,000,000 wired from the Bank into Escrow for his escrow fee, all without the consent or approval of the Bank.

26. In taking the actions hereinabove alleged, Gawad breached the Escrow Agreement with respect to his unauthorized transfer of the $1,000,000 previously wired by the Bank to the

6

Escrow Account.

27. The Bank has duly performed all conditions precedent required to be performed pursuant to the Escrow Agreement.

28. An Event of Default occurred under the Loan Documents because of the failure of the Borrower to pay to the Bank the outstanding Indebtedness owing to the Bank pursuant to the Loan Documents on July 16, 2023. As a result, on July 21, 2023, the Bank applied funds in the amount of $3,979,214.23 from the Account to the outstanding principal balance due and owing by the Borrower to the Bank pursuant to the Loan Documents.

29. Thereafter, on August 10, 2023, the Bank made written demand for payment on the Borrower for all outstanding Indebtedness owed pursuant to the Loan Documents. Notwithstanding such demand, Borrower has wholly failed and neglected to pay such sum and such failure continues to the date hereof. As of February 13, 2024, Borrower is indebted to Bank pursuant to the terms of the Loan Documents in the principal sum of $1,020,567.73, plus accrued but unpaid interest thereon, plus late charges, plus attorneys' fees and expenses which are due and owing in connection with the Loan Documents according to proof to be presented at time of trial or date of entry of judgment.

30. The Bank has duly performed all of the conditions precedent on its part required to be performed pursuant to the Loan Documents and the Escrow Agreement.

31. As a result of Gawad's breach of the Escrow Agreement, Bank has been damaged in an amount according to proof to be presented at time of trial, but not less than the sum of $1,000,000, plus interest thereon at the legal rate of 10% per annum, plus an award of attorneys' fees incurred by the Bank which are recoverable from Gawad pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1157.

## COUNT II

### (Breach of Fiduciary Duty)

32. The Bank repeats and realleges the allegations contained in paragraphs 1 through 31 inclusive, above and by reference thereto incorporates the same herein as though set forth in full.

33. The Bank placed its utmost trust and confidence in Gawad, as a party to the Escrow Agreement, to follow the instructions of the Bank as provided for by the Escrow Agreement. Gawad, by entering into the Escrow Agreement, knowingly undertook to act for the benefit of the Bank. Gawad owed fiduciary duties to the Bank to conduct himself with the utmost good faith and fair dealing, to act loyally for Bank's benefit, and to refrain from any self dealing.

34. Gawad breached his fiduciary duties to Bank by virtue of the events hereinabove alleged and by knowingly acting against Bank's interest in order to advance his own interests. Such breaches include, but are not limited to, transferring the $1,000,000 deposited into the Escrow Account by the Bank without receiving written instructions from Bank by wiring $990,000 to Khloris and by paying himself a $10,000 Escrow fee from the monies deposited by the Bank into Escrow.

35. The Bank neither consented to nor authorized the acts hereinabove engaged in by Gawad.

36. As a direct and proximate result of Gawad's breaches of fiduciary duty, the Bank suffered damages in an amount according to proof to be presented at time of trial, but in a sum of not less than $1,000,000, plus interest thereon at the legal rate of 10% per annum, plus an award of attorneys' fees incurred by the Bank pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1157.

37. Gawad also acted willfully, maliciously, and oppressively with the intent to harm

the Bank and with willful disregard for the consequences of doing so thereby injuring the Bank as hereinabove alleged, and therefore the Bank is entitled to exemplary and punitive damages in an amount to be proven at trial.

### COUNT III

**(Negligence)**

38. The Bank repeats and realleges the allegations contained in paragraphs 1 through 37 , inclusive, above and by reference thereto incorporates the same herein as though set forth in full.

39. Gawad owed a duty to use due care in the performance of his duties pursuant to the Escrow Agreement and to follow the written instructions of the Bank with respect to the transfer of any funds from the Escrow Account to any third parties. Gawad breached his duty of care to the Bank in that Gawad transferred monies from the Escrow Account to Khloris in the sum of $990,000 and paid himself an Escrow fee of $10,000, all without the written consent and approval of the Bank, and therefore breached the duty of care imposed on him pursuant to the Escrow Agreement.

40. As is required by the terms of the Escrow Agreement, Gawad had an obligation to act with reasonable care in all transactions which were the subject of the Escrow Agreement. Gawad's negligence, actions and omissions directly caused damage to the Bank as hereinabove alleged.

41. As a direct result of the foregoing, the Bank has been damaged according to proof to be presented at time of trial, but in a sum of not less than $100,000, plus interest thereon at the legal rate of 10% per annum, plus an award of attorneys' fees incurred by the Bank pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1157.

**DEMAND FOR RELIEF**

WHEREFORE, Bank prays for judgment as follows:

**ON COUNT I:**

1. For compensatory damages in the sum of $1,000,000, plus interest thereon at the legal rate of 10% per annum according to proof to be presented at time of trial or entry of judgment, plus reasonable attorneys' fees in the sum of <u>not</u> <u>less</u> <u>than</u> $50,000 pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1

**ON COUNT II:**

2. For compensatory damages in the sum of $1,000,000, plus interest thereon at the legal rate of 10% per annum according to proof to be presented at time of trial or entry of judgment, plus reasonable attorneys' fees in the sum of <u>not</u> <u>less</u> <u>than</u> $50,000 pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1157;

3. For an award of punitive and exemplary damages;

**ON COUNT III:**

4. For compensatory damages in the sum of $1,000,000, plus interest thereon at the legal rate of 10% per annum according to proof to be presented at time of trial or entry of judgment, plus reasonable attorneys' fees in the sum of <u>not</u> <u>less</u> <u>than</u> $50,000 pursuant to *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1155-1157;

**ON ALL COUNTS:**

5. For costs of suit herein incurred; and

6. For such and other relief as the Court may deem just and proper.

DATED:  February 16, 2024				GKG LAW, P.C.


						/s/ Brendan Collins
						BRENDAN COLLINS
						(State Bar No. 8612010100)
						GKG LAW, P.C.
						1055 Thomas Jeferson Street, NW, Suite 620
						Washington, DC  20007
						Telephone: (202) 342-6793
						Fax: (202) 342-5299
						bcollins@gkglaw.com


						ROBERT B. KAPLAN
						(California State Bar No. 76950)
						pro hac vice admission pending
						JAMES NEUDECKER
						(California State Bar No. 221657)
						pro hac vice admission pending
						JEFFER MANGELS BUTLER & MITCHELL LLP
						Two Embarcadero Center, 5th Floor
						San Francisco, CA  94111
						Telephone: (415) 398-8080
						Fax: (415) 398-5584
						rkaplan@jmbm.com
						jneudecker@jmbm.com

						Attorneys for Plaintiff UNITED BUSINESS BANK