IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED BUSINESS BANK,
    *Plaintiff*,

v.

SAM A. GAWAD, JR.
    *Defendant*

Civil Action No.
24-cv-0473-ABA

**MEMORANDUM OPINION AND ORDER**

Plaintiff United Business Bank ("UBB") has sued Defendant Sam Gawad, Jr. ("Gawad") for allegedly breaching a February 2023 escrow agreement, and correspondingly violating fiduciary duties, by directing that the funds at issue be transferred to a third party and himself. UBB seeks compensatory damages, interest, punitive damages, and attorneys' fees. Gawad has moved to dismiss the complaint. For the reasons that follow, the Court will partially dismiss UBB's claim for attorneys' fees; otherwise the motion will be denied.

**I.    FACTS[1]**

In 2021, UBB made a loan to the Lynne A. Bui Living Trust (the "Trust") with Lynn A. Bui ("Bui") as trustee. Compl. ¶ 5, ECF No. 1. The loan was effectuated by a $5,000,000 promissory note, a business loan agreement, and assignment of a deposit account that granted UBB "a security interest in the Account consisting of Certificate of Deposit Account No. 2200160 with an approximate balance of $5,000,000 (the '[CD]')." *Id.* ¶¶ 5-9. In early 2022, Bui asked UBB to "temporarily release $1,000,000 from the [CD] in order to allow Bui to close on

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

and pay a refundable loan fee on a $20,000,000 proposed loan to be made by Capital Funds Manager LLC, to LeSoleil, Inc."; UBB understands that Bui is the "Chief Executive Officer, Secretary and Chief Financial Officer" of LeSoleil. *Id.* ¶ 11. UBB agreed to release the $1,000,000, but only on the conditions that (1) Gawad hold the funds in "an escrow account established by Gawad" and only release them to Capital Funds Manager "upon Gawad receiving written approval from [UBB]," and (2) Bui would pay "an early withdrawal fee." *Id.* ¶ 12.

On February 22, 2023, Peter Taormina, Commercial Lending Portfolio Manager of UBB, sent Gawad the terms of the proposed escrow agreement, which included that Gawad was "required to obtain written approval from [UBB] prior to the release of $1MM escrow funds to Capital Funds Manager LLC at the time the $20MM loan is closed" and that at closing, Gawad was required to "[r]elease the $1MM Retainer Fee to Capital Fund Managers LLC" and "the $20MM in Loan proceeds to LeSoleil Inc. of which $1MM will be wired directly to United Business Bank to repay the $1MM." *Id.* ¶ 13. UBB contends that Gawad agreed to those terms. *Id.* ¶¶ 14-16. Gawad subsequently referred to the account with the $1 million as an "escrow," and to himself as "escrow agent." *Id.* ¶¶ 18, 20. Gawad had demanded "a 1% escrow fee"; UBB alleges that insofar as any fee was agreed to in connection with the escrow arrangement, any such fee was to be paid by Bui, not UBB, "so that $1MM funds [UBB] sen[t] in is always whole." *Id.* ¶¶ 18-22. On February 24, 2023, UBB wired the $1,000,000 to Gawad to hold in escrow. *Id.* ¶ 23.

On July 18, 2023, UBB learned that Bui had filed for bankruptcy. *Id.* ¶ 24. "In response, on July 19, 2023, George Kim ('Kim'), Senior Vice President and Regional Term Leader of [UBB], contacted Gawad by telephone and requested that he return the $1,000,000 wired by [UBB] into the Escrow established by Gawad." *Id.* ¶ 25. Gawad then told Kim that on February

2

27, 2023, three days after he had received the money, he had wired $990,000 of the funds to Khloris Biosciences, Inc., a corporation allegedly connected to Bui, and retained $10,000 as his purported escrow fee. *Id.* UBB alleges that Gawad breached the escrow agreement by taking these actions. *Id.* ¶ 26. Bui's bankruptcy was an event of default under the loan agreement, so UBB applied the remaining $4,000,000 from the CD to Bui's outstanding principle. *Id.* ¶ 28.

UBB has brought this action, as well as litigation against Bui and Khloris Biosciences in California state court, to recover the $1,000,000 that Gawad released to Khloris and himself.[2] In this case, UBB asserts three causes of action: breach of the alleged escrow agreement, breach of fiduciary duty, and negligence. It seeks compensatory damages, interest, punitive damages, and attorneys' fees.

Gawad has moved to dismiss the complaint, ECF No. 34 ("Mot."), UBB filed a response in opposition, ECF No. 36 ("Opp."), and Gawad filed a reply, ECF No. 41 ("Reply").

## II.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief.

---

[2] UBB has requested the Court take judicial notice of the complaints filed in those state actions. *See* Opp. Ex. A & B. The Court will accept the request since "[i]n reviewing a Rule 12(b)(6) dismissal, [it] may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

*Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

### III.  ANALYSIS

#### A.  UBB's Standing

Gawad first argues that UBB lacks standing to bring this action because "once UBB agreed to release the $1,000,000 from the CD (and particularly since UBB received consideration for doing so) then UBB no longer had any security interest over that money." Mot. at 5. "To possess standing, a plaintiff must sufficiently allege . . . that they have: '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Here, as discussed below, UBB has adequately alleged that there was an escrow agreement between UBB and Gawad, that Gawad breached that agreement, and that as a result, UBB was injured in an amount of at least $1,000,000. Moreover, the alleged monetary injury would be redressed by a favorable decision by this Court. Thus, UBB has standing.

#### B.  The Existence of the Escrow Agreement

Next Gawad moves to dismiss Count 1 (for breach of the alleged escrow agreement) and Count 2 (for breach of fiduciary duty), on the ground that no escrow agreement was created.

First, he argues his email exchange with UBB regarding holding the $1,000,000 in escrow did not create an escrow agreement. According to Gawad, "an escrow agreement is 'a contract in which a third party holds property that is to be released to another party to the contract upon completion of certain conditions precedent.'" Mot. at 6 (quoting *Davis v. Holsten*, 270 Va. 389, 395 (2005)). This describes the agreement between UBB and Gawad as alleged in the complaint. The emails between the parties indicate that Gawad, who was a third party with respect to the underlying loan agreement (between UBB, on one hand, and Bui and/or the Trust, on the other), was to hold $1,000,000, and was only to release it to another party—specifically, Capital Funds Manager—at the closing of Capital Funds Manager's $20 million loan to Bui, and upon written approval from UBB.

Second, Gawad argues that although there was an agreement between Capital Funds Manager, Bui, and UBB regarding the $20,000,000 loan, and a separate agreement between UBB and Gawad to hold the $1,000,000, there was no single agreement between all of the parties detailing the loan and escrow arrangements. *Id.* at 6-7. But that is not necessary; the complaint adequately alleges an escrow agreement between UBB and Gawad.

Third, Gawad contends the emails that constitute the agreement between UBB and Gawad lacked a necessary objective event "which would have triggered GAWAD's duty to release the money." *Id.* at 7. But the emails constituting the escrow arrangement do provide a condition for the release of funds. At the closing of the loan from Capital Funds Manager to Bui, and upon written approval by UBB, Gawad was to release the $1,000,000 to Capital Funds Manager. Once Bui had the 20,000,000 loan, UBB was to be reimbursed the 1,000,000 to make whole UBB's security interest in the CD.

5

Finally, Gawad argues that UBB did not intend for the agreement to be an escrow agreement because after it discovered Bui's bankruptcy, UBB verbally requested return of the $1,000,000, which he argues was in contravention of the agreement to only release the money to Capital Funds Manager on UBB's *written* instructions. *Id.* at 8. That does not indicate that there was no escrow agreement. Instead, it indicates UBB was attempting to recoup its security after Bui breached the loan agreement. Indeed, the point of the escrow agreement was to secure UBB's interest in the $1 million during the relevant financial transactions.

The complaint adequately alleges the existence of an escrow agreement.

### C.   Breach of the Escrow Agreement

Gawad next argues that he did not breach the alleged escrow agreement because the agreement only prohibited him from releasing the funds "*to Capital Funds* without written instructions." *Id.* at 10 (emphasis added). In other words, Gawad does not dispute that the complaint alleges that he (a) released the funds to Khloris Biosciences and himself, not Capital Funds Manager, and (b) did so without any approval from UBB, let alone written approval. But he contends that neither of those actions in fact constituted breaches of the agreement because the agreement only prohibited him from releasing funds *to Capital Funds* without UBB's approval. The notion that the agreement permitted Gawad, as escrow agent, to release the $1 million to some other unnamed and undefined "authorized party" other than Capital Funds without restriction, and without UBB's approval, is an absurd construction of the alleged escrow agreement. The Court must accept UBB's allegations at this stage, and no reasonable and objective construction of the terms of the alleged escrow agreement would have permitted Gawad to release the funds to Khloris and himself. As alleged, the entire purpose of UBB insisting on an escrow agreement before releasing the $1 million from the CD was to ensure that,

if the underlying loan agreement did not go through—including the requirement that "[a]t closing" on the loan, "$1MM will be wired directly to United Business Bank to repay the $1MM"—the funds that UBB was agreeing to release from the CD would be available in the escrow account to return to UBB. *See* Compl. ¶ 13.

The complaint adequately alleges that Gawad was to hold the $1,000,000 and release it only to Capital Funds Management upon UBB's written approval (which would occur once the $20,000,000 loan was closed). Gawad did not do this and, instead, he sent the money to a separate party allegedly affiliated with Bui (Khloris Biosciences) three days after receiving the money, thus breaching the agreement. *Id.* ¶ 25. The agreement as alleged in the complaint is also clear that Gawad was not to take a commission from the $1,000,000 but, instead, Bui would pay his commission separately. *Id.* ¶¶ 18-22, 25. Thus, the complaint also adequately alleges that Gawad breached the escrow agreement by paying himself from the $1,000,000. Accordingly, Gawad's motion to dismiss Count 1 will be denied.

Moreover, insofar as an escrow agreement was created (which the complaint adequately alleges), Gawad as escrow agent had a fiduciary duty to the depositor (here UBB). *See Roman v. Sage Title Grp., LLC*, 229 Md. App. 601, 613 (2016), *aff'd*, 455 Md. 188 (2017) ("[E]scrow agents owe their depositors a fiduciary duty to disburse the deposits according to the terms of the escrow agreement.") (quoting *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998)). Because UBB has adequately alleged that Gawad breached that fiduciary duty and Gawad seeks dismissal of Count 2 solely on the basis that there was no escrow agreement, Gawad's motion to dismiss Count 2 will be denied as well.

### D.     Negligence

Gawad separately moves to dismiss Count 3, which alleges that Gawad, in addition to owing UBB a fiduciary duty pursuant to the escrow agreement, owed UBB a duty of care actionable through a negligence claim. Gawad's sole argument for dismissal of Count 3 is that he "acted consistently with the written restriction in UBB's email message, and consistently with UBB's expectation and understanding." Mot. at 11. As described above, the complaint adequately alleges that Gawad breached the escrow agreement with UBB and his fiduciary duties to UBB. Therefore, the Court will not dismiss the negligence claim.[3]

### E.     Equitable Estoppel

As noted above, in addition to having sued Gawad in this case, UBB has sued Bui and Khloris Biosciences in California state court. Gawad argues that this case against him should be dismissed because UBB should be equitably estopped from attempting to recoup the $1,000,000 from both Gawad and Bui at the same time. *Id.* at 12. However, an injured party may seek to recover its damages from multiple tortfeasors responsible for the injury. Md. Code, Cts. & Jud. Proc. § 3-1403 ("The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor."). Gawad's request to dismiss UBB's claims against him on estoppel grounds is denied.

### F.     Punitive Damages

As noted above, in addition to seeking compensatory damages, UBB seeks an award of punitive damages. Compl. ¶ 37 & p. 10. Gawad seeks dismissal of the claim for punitive damages, contending the complaint fails to allege conduct "characterized by evil motive, intent

---

[3] The Court does not decide whether the duties created by an escrow agreement can also give rise to a negligence claim. Gawad's motion does not present that issue.

to injure, or fraud" that would justify punitive damages. Mot. at 12-13 (quoting *Beall v. Holloway-Johnson*, 446 Md. 48, 71-72 (2016)). UBB argues that "[u]nder California and Maryland law. . . a cause of action for breach of fiduciary duty can justify an award of punitive damages." Opp. at 18 (citing *Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (1986); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994); *Adams v. Coates*, 331 Md. 1, 12 (1993)).

As an initial matter, this argument presents a choice of law question: does Maryland law or California law apply to UBB's request for punitive damages? The Court need not resolve that question, however, because under both Maryland and California law, the complaint states a cognizable claim for punitive damages. Under both states' laws, punitive damages are only available for breach of fiduciary duty "to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Adams*, 331 Md. at 13 (quoting *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 452 (1992)); *Flyer's Body Shop*, 185 Cal. App. 3d at 1154 ("[A] breach of a fiduciary duty alone without malice, fraud or oppression does not permit an award of punitive damages.").

Here, the complaint alleges that Gawad knew the terms of the escrow agreement and accepted the $1,000,000 under those terms. Comp. ¶¶ 13-23. The complaint further alleges that Gawad then disregarded all material terms of the agreement by retaining $10,000, enriching himself, and remitting the remaining $990,000 to a third party allegedly affiliated with Bui. *Id.* ¶ 25. The Complaint alleges that these actions were done "willfully, maliciously, and oppressively with the intent to harm" UBB. *Id.* ¶ 37. Likewise, the complaint alleges that Gawad "knowingly act[ed] against [UBB's] interest in order to advance his own interests." *Id.* ¶ 34. The Court

concludes that, after drawing all reasonable inferences in favor of UBB, these allegations adequately allege Gawad acted with malice and with the intent to injure UBB. Gawad's motion to strike the punitive damages will, therefore, be denied.

### F.     Attorneys' Fees

Gawad also seeks to strike the requests for attorneys' fees that UBB requests pursuant to California's "tort of another doctrine." Mot. at 13; *see* Compl. ¶¶ 31, 36, 41 & p.10 (citing *Flyer's Body Shop*, 185 Cal. App. 3d at 1155-57). Gawad asserts, without discussion, that Maryland law applies and has no analog to the California doctrine. California's "tort of another doctrine" applies when a plaintiff "is required to employ counsel to prosecute or defend an action against a third party because of the tort of the defendant." *Flyer's Body Shop*, 185 Cal. App. 3d at 1155 (quoting *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 505 (1984)).

 UBB counters that attorneys' fees are warranted under both California and Maryland law because Maryland does have an analogous exception to the American attorneys' fee rule called the "collateral litigation doctrine," which "permits a party to recover attorney's fees actually incurred 'when the wrongful conduct of a defendant forces a plaintiff into litigation with a third party.'" *Wheeling v. Selene Fin. LP*, 473 Md. 356, 401 (2021) (quoting *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 346 (1990)).  "[T]he collateral litigation doctrine permits the court to award as damages the legal fees from the separate litigation." *Id.* (quoting *E. Shore Title Co. v. Ochse*, 453 Md. 303, 333 (2017)).

As explained in *Wheeling,* rather than an exception to the American fee rule, "the [collateral litigation] doctrine is actually 'an acknowledgement that the litigation costs incurred by a party in separate litigation may sometimes be an appropriate measure of compensatory damages against another party.'" *Id.* (quoting *Ochse*, 453 Md. at 334). The California tort of

another doctrine appears to be no different. *See Flyer's Body Shop*, 185 Cal. App. 3d at 1152 (describing that the fees at issue were "attorney fees incurred in a separate action by plaintiff" and holding "that it is improper to award attorney fees as damages for the prosecution of a separate tort which is unrelated to the defendant's negligent conduct"). Thus, these doctrines do not concern attorneys' fees paid in the current action, but instead concern fees paid as part of a separate ligation. To the extent alleged by UBB, the Court will strike any request for attorneys' fees for *this* litigation. But if discovery shows that UBB was forced to litigate the California actions against Bui and Khloris Biosciences *because* of Gawad's wrongful conduct, rather than because of the actions of Bui and Khloris Biosciences, Maryland and/or California law may permit UBB to recover from Gawad the fees associated with those two cases as compensatory damages in this case.[4] Accordingly, Gawad's request to strike UBB's request for an award of attorneys' fees in its entirety will be denied.

### IV.     CONCLUSION AND ORDER

For the reasons stated, Gawad's motion to dismiss (ECF No. 34) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent that any request for attorneys' fees *for this action* are STRICKEN. The motion is DENIED in all other respects. Gawad shall file an answer to the complaint by November 8, 2024.

Date: October 25, 2024                                        /s/
                                                                            Adam B. Abelson
                                                                            United States District Judge

---

[4] Because the Maryland and California standards on this issue appear to be the same, the Court need not decide, at least at this time, which state's laws in fact apply to UBB's request to recover the fees UBB has incurred or may incur in its litigation with Bui and Khloris Biosciences.